**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**Case No. 1:26-cv-00828**

DANIEL PERDOMO, individually and on behalf of all others similarly situated,

v.

MONARCH CASINO & RESORT, INC. and MONARCH BLACK HAWK, INC.

---

# ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

---

## SUMMARY

1. Monarch Casino & Resort, Inc. and Monarch Black Hawk, Inc. (together, "Monarch") switched their employee timekeeping and payroll provider beginning around December 2025.

2. At that time, Monarch changed timekeeping and payroll functions from Infor to Workday.

3. That changeover led to problems in timekeeping and payroll throughout Monarch's organization.

4. As a result, Monarch's employees—including those who were non-exempt under federal or Colorado law—were not paid their full and correct regular or overtime wages hours worked and/or were not paid minimum wages or full overtime premiums on time, if at all.

5. Daniel Perdomo is one such Monarch worker whose pay was disrupted by the changeover.

6. And this was not the only improper wage-and-hour practice Monarch engaged in.

7. When Monarch used the Infor system, Monarch failed to pay Perdomo and other hourly workers like him for all hours worked each week.

8. Instead of paying Perdomo and other hourly workers for all of their time, Monarch regularly rounded down the time they worked.

9. Monarch's failure to pay wages, including minimum wages and proper overtime, on time and in full for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Monarch's failure to pay wages on time and in full for all hours worked to its workers in Colorado violates Colorado Constitution art. XVIII, § 15, the Colorado Wage Act (CWA), C.R.S. § 8-4-101 *et seq.*, the Colorado Minimum Wage Act (CMWA), C.R.S. § 8-6-101 *et seq.*, and the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order") #39, 7 C.C.R. 1103-1 (collectively, "Colorado Wage-and-Hour Law").

11. This action seeks to recover the unpaid wages and other damages Monarch owes Perdomo and these all these workers under the law, including unpaid wages, liquidated damages, penalties, interest, and other remedies provided by federal and Colorado law.

## JURISDICTION & VENUE

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

15. Perdomo worked for Monarch in this District.

## Parties

16. **Plaintiff Daniel Perdomo** is a natural person.

17. Perdomo was, at all relevant times, an employee of Monarch.

18. Perdomo worked for Monarch during and after the changeover to Workday.

19. Perdomo worked for Monarch in Colorado.

20. Perdomo represents at least three groups of similarly situated employees of Monarch.

21. Perdomo represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). The "FLSA Collective" is defined as:

> **All persons employed by Monarch Casino and/or Monarch Black Hawk in the United States and classified as non-exempt during any pay period affected by timekeeping and payroll disruptions, beginning on or about December 19, 2025, until the time that Monarch resumed normal employee timekeeping and payroll operations.**

22. Perdomo represents a class of similarly situated workers under Colorado law pursuant to Federal Rule of Civil Procedure 23. This "Changeover Class" is defined as:

> **All persons employed by Monarch Casino and/or Monarch Black Hawk in Colorado and classified as non-exempt during any pay period affected by timekeeping and payroll disruptions, beginning on or about December 19, 2025, until the time that Monarch resumed normal employee timekeeping and payroll operations.**

23. Perdomo represents a class of similarly situated workers under Colorado law pursuant to Federal Rule of Civil Procedure 23. This "Rounding Class" is defined as:

> **All persons employed by Monarch Casino and/or Monarch Black Hawk in Colorado who were paid on an hourly basis and whose time was rounded down on at least one occasion, at any point from three years prior to the date of filing, until judgment is entered.**

24. Throughout this Complaint, the FLSA Collective members, Changeover Class members, and Rounding Class members are referred to collectively as the "Similarly Situated Workers."

25. **Defendant Monarch Casino & Resorts, Inc. ("Monarch Casino")** is a foreign corporation.

26. Monarch Casino does business in a systematic and continuous manner throughout Colorado and this District.

27. Monarch Black Hawk may be served by service upon its registered agent, **National Registered Agents, Inc., 7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112**, or by any other method allowed by law.

28. **Defendant Monarch Black Hawk, Inc. ("Monarch Black Hawk")** is a domestic corporation.

29. Monarch Black Hawk may be served by service upon its registered agent, **National Registered Agents, Inc., 7700 E. Arapahoe Rd., Ste. 220, Centennial, CO 80112**, or by any other method allowed by law.

30. Monarch Casino and Monarch Black Hawk employed and/or jointly employed Perdomo.

31. Monarch Casino and Monarch Black Hawk employed and/or jointly employed the Similarly Situated Workers.

32. Monarch Casino and Monarch Black Hawk are joint employers of Perdomo for purposes of the FLSA.

33. Monarch Casino and Monarch Black Hawk are joint employers of the FLSA Collective for purposes of the FLSA.

34. Monarch Casino and Monarch Black Hawk are joint employers of the Perdomo for purposes of Colorado law.

35. Monarch Casino and Monarch Black Hawk are joint employers of the Changeover Class for purposes of Colorado law.

36. Monarch Casino and Monarch Black Hawk are joint employers of the Rounding Class for purposes of Colorado law.

## COVERAGE UNDER THE FLSA

37. At all relevant times, Monarch was an employer of Perdomo within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

38. At all relevant times, Monarch was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

39. At all relevant times, Monarch was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

40. During at least the last three years, Monarch has had gross annual sales in excess of $500,000.

41. At all relevant times, Monarch operated simultaneously in two or more states.

42. Monarch was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

43. Monarch employs many workers, including Perdomo, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

44. The goods and materials handled, sold, or otherwise worked on by Perdomo and other Monarch employees and that have been moved in interstate commerce include, but

are not limited to, office supplies, computer equipment, telecommunications equipment, cleaning supplies, food and beverages, and hotel supplies.

## FACTS

45. Monarch operates gaming, dining, and hospitality facilities.

46. Many of Monarch's employees are non-exempt hourly and salaried workers.

47. Prior to December 2025, Monarch used Infor for timekeeping and payroll services for its workers.

48. On or about December 19, 2025, Monarch switched the timekeeping and payroll functions from Infor to Workday.

49. In switching to Workday, Monarch suffered a disruption in its timekeeping and payroll operations.

50. The disruptions interfered with Monarch's ability to accurately track the time worked by its employees and to pay them for the time they worked.

51. For at least a portion of time following the Workday changeover, Monarch failed to accurately track the hours that Perdomo and Similarly Situated Workers worked.

52. For at least a portion of time following the Workday changeover, Monarch failed to correctly pay Perdomo and Similarly Situated Workers for the hours that it did track, or for hours that were not tracked.

53. As a result of Monarch's failure to accurately track the actual hours worked each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

54. As a result of Monarch's failure to accurately pay non-exempt employees the hours that they reported each week, employees who were non-exempt were in many cases paid less than the hours they worked in the workweek, including overtime hours.

55. Many employees were not paid for all their non-overtime wages for hours worked in certain workweeks.

56. Perdomo is one of the many Monarch employees affected by these pay and timekeeping practices.

57. Perdomo regularly worked over 40 hours per week for Monarch.

58. Perdomo worked for Monarch for more than 40 hours in one or more workweeks and pay periods disrupted by the Workday changeover.

59. Perdomo was not paid the proper overtime premium for all hours worked on time, if at all, for each workweek after the beginning of the Workday changeover.

60. Perdomo was not paid all wages he was owed for all hours worked on time, if at all, for each workweek after the beginning of the Workday changeover.

61. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

62. Monarch knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

63. Monarch knows this because, prior to the Workday changeover, it routinely paid these workers for overtime hours at the proper overtime rates.

64. Monarch knows it has to pay the wages owed to non-exempt hourly and salaried employees.

65. Monarch knows this because, prior to the Workday changeover, it routinely paid these workers the amounts they were owed on the workers' regularly designated paydays.

66. Monarch could have instituted any number of methods to accurately track and timely pay their employees for all hours worked.

67. But Monarch did not accurately track time and fully and timely pay employees for the time they worked, including overtime hours, and at the regular rates at which they were supposed to be paid.

68. It was feasible for Monarch to put in timekeeping and pay systems during the implementation of Workday so that employees would be timely paid the full and correct amounts of money they were owed for the work they did for the company.

69. Monarch had full control over when to implement the changeover to Workday.

70. Monarch had full control over how to implement the changeover to Workday.

71. But Workday failed to put a competent system in place to ensure that happened.

72. In other words, Monarch pushed the effects of the timekeeping and payroll disruption onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to those employees in its own pockets, rather than taking steps to make sure its employees were paid on time and in full for the work they did.

73. An employer cannot set up inefficient timekeeping and payroll systems and then claim it is not responsible for the timely payment of wages. *CaBower v. City of New Brunswick*, 99 F.Supp.2d 464, 475 (D.N.J. 2000).

74. Yet, in the wake of the disruptions caused by the Workday changeover, that is exactly what Monarch did.

75. Perdomo is just one of the many employees who had to shoulder the burden of this decision by Monarch.

76. Perdomo is just one of the many Monarch employees who had to shoulder the burden of Monarch's timekeeping and payroll policies and practices.

77. Perdomo was a non-exempt hourly employee of Monarch.

78. Perdomo regularly worked over 40 hours per week for Monarch.

79. Perdomo's normal, pre-Workday changeover hours are reflected in Monarch's records.

80. Perdomo regularly worked over 40 hours per week for Monarch on one or more workweeks during payroll cycles disrupted by the Workday changeover.

81. In payroll cycles disrupted by the Workday changeover, Monarch did not timely pay Perdomo and Similarly Situated Workers for their actual hours worked each week.

82. In payroll cycles disrupted by the Workday changeover, Monarch did not accurately record the hours worked by Perdomo and Similarly Situated Workers, in multiple workweeks.

83. Monarch was aware of the overtime requirements of the FLSA.

84. Monarch nonetheless failed to timely pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Perdomo.

85. Monarch's failure to pay overtime to these non-exempt workers constitutes a willful violation of the FLSA.

86. The full overtime wages owed to Perdomo and the Similarly Situated Workers became "unpaid" when the work for Monarch was done—that is, on Perdomo and the Similarly Situated Workers' regular paydays. *See*, *e.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

87. At the time Monarch failed to pay Perdomo and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Monarch became liable for all liquidated damages and any other damages owed under federal law.

88. In other words, there is no distinction between late payment and nonpayment of wages under federal law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

89. Any payment made by Monarch to Perdomo or the Similarly Situated Workers that Monarch may allege represents previously unpaid wages was not supervised by the Department of Labor or any court.

90. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

91. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Monarch's acts and omissions resulting in the unpaid wages in the first place.

92. Perdomo complained in writing to Monarch regarding the pay disruptions caused by the Workday changeover.

93. Othe employees, including Similarly Situated Workers, complained in writing to Monarch regarding the pay disruptions caused by the Workday changeover.

94. Perdomo demanded, in writing to Monarch, that he be paid the wages Monarch owed after the pay disruptions caused by the Workday changeover.

95. Othe employees, including Similarly Situated Workers, demanded, in writing to Monarch, that he be paid the wages Monarch owed after the pay disruptions caused by the Workday changeover.

96. Nevertheless, Monarch did not pay all wages due and owing to these employees.

97. Monarch did not pay these employees all wages due within 14 days of their complaints.

98. Perdomo and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by Monarch under the law.

99. The failure to pay wages caused by the Workday changeover are not the only ones Monarch has had.

100. Many of Monarch's employees are hourly workers.

101. As a practice, however, Monarch regularly failed to pay these hourly workers for all time they spend working for Monarch.

102. When using the Infor system, Monarch rounded employees' time when they clock in and out for each shift.

103. Monarch's clock would, in fact, automatically round these times in 15-minute increments.

104. So when an employee clocked in, their time could be rounded down to the nearest 15-minute increment.

105. Perdomo is one such hourly worker for Monarch subject to this pay practice.

106. As a result, many employees were not even paid for all their regular and overtime wages for hours worked in certain workweeks.

107. Perdomo is one of the many of Monarch employees affected by these pay and timekeeping practices.

108. Perdomo was an hourly employee of Monarch.

109. Monarch never paid Perdomo a salary.

110. Monarch never paid Perdomo on a fee basis.

111. Monarch paid Perdomo by the hour.

112. Monarch reported the hours he worked to Monarch on a regular basis.

113. Perdomo's hours are reflected in Monarch's records.

114. Perdomo regularly worked over 40 hours per week for Monarch.

115. Monarch was aware of the requirement of Colorado Wage-and-Hour law to pay employees for all time spent working.

116. Monarch nonetheless failed to pay hourly employees, such as Perdomo, wages for all hours worked, including overtime, as required by Colorado Wage-and-Hour law.

117. Monarch's failure to pay wages to these non-exempt workers was, and is, a willful violation of Colorado Wage-and-Hour law.

## Collective Action Allegations

118. Numerous individuals were victimized by Monarch's patterns, practices, and policies, which are in willful violation of the FLSA.

119. Based on his experience and tenure with Monarch, Perdomo is aware that Monarch's illegal practices were imposed on the FLSA Collective.

120. The FLSA Collective members were not paid their full overtime premiums on time, if at all, for all overtime hours worked.

121. These employees are victims of Monarch's respective unlawful compensation practices and are similarly situated to Perdomo in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

122. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

123. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

124. Monarch's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

125. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## **CLASS ACTION ALLEGATIONS—COLORADO LAW**

126. The illegal practices Monarch imposed on Perdomo were likewise imposed, respectively, on the Rounding and Changeover Class members.

127. Numerous other individuals who worked for Monarch were not properly and timely compensated for all hours worked, as required by Colorado law.

128. The Rounding and Changeover Classes are each so numerous that joinder of all members of either or both the classes is impracticable.

129. Monarch imposed uniform practices and policies on Perdomo and the respective Rounding and Changeover Class members regardless of any individualized factors.

130. Based on his experience and tenure with Monarch, Perdomo is aware that Monarch's illegal practices were imposed, respectively, on the Rounding and Changeover Class members.

131. Rounding Class members were for all of their time spent working for Monarch each week.

132. Changeover Class members were all not paid on time, if at all, for all of their wages, including overtime, when they worked in excess of 40 hours per week.

133. Monarch's failure to pay wages and overtime compensation in accordance with Colorado law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Rounding or Changeover Class members.

134. Monarch's failure to pay contractually agreed wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Rounding or Changeover Class Members.

135. Perdomo's experiences are therefore typical of the experiences of the Rounding and Changeover Class members.

136. Perdomo has no interest contrary to, or in conflict with, the members of the Rounding or Changeover Class. Like each member of the proposed class, Perdomo has an interest in obtaining the unpaid wages and other damages owed under the law.

137. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

138. Absent this action, many Rounding and Changeover Class members likely will not obtain redress of their injuries and Monarch will reap the unjust benefits of violating Colorado law.

139. Furthermore, even if some of the Rounding and Changeover Class members could afford individual litigation against Monarch, it would be unduly burdensome to the judicial system.

140. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

141. The respective questions of law and fact common to each of the Rounding and Changeover Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a. Whether Perdomo and the Rounding and Changeover Class members were paid at least the applicable minimum wage for all hours worked;

b. Whether Perdomo and the Rounding and Changeover Class members were paid overtime at 1.5 times their regular rate of pay for all hours worked in excess of 40 in a workweek, 12 in a workday, or 12 per shift;

c. Whether Monarch paid the wages due to Perdomo and the Rounding and Changeover Class within the time required;

d. Whether Monarch's failure to pay minimum and overtime wages at the rates required by law violated Colorado Wage-and-Hour Law;

e. Whether Monarch has any valid good faith or willfulness defense to paying the applicable wages.

142. Perdomo's claims are typical of the Rounding and Changeover Class members. Perdomo and the Rounding and Changeover Class members have all sustained damages arising out of Monarch's illegal and uniform employment policies.

143. Perdomo knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

144. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

## First Cause of Action—Overtime Violations of the FLSA as to Perdomo and the FLSA Collective

145. Perdomo incorporates each allegation in paragraphs 1 to 144.

146. By failing to pay employees at least the minimum wage, on time and in full, for each hour worked, Monarch violated the FLSA. 29 U.S.C. § 206(a).

147. By failing to pay Perdomo and the FLSA Collective members overtime at 1.5x their regular rates, on time and in full, Monarch violated the FLSA. 29 U.S.C. § 207(a).

148. Monarch owes Perdomo and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

149. Monarch owes Perdomo and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

150. Likewise, Monarch owes Perdomo and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours. 29 C.F.R. § 778.315.

151. Monarch knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay Perdomo and the Collective members the compensation owed to them under the FLSA.

152. Because Monarch knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Monarch owes these wages for at least the past three years.

153. Monarch's failure to pay compensation owed under the FLSA to Perdomo and the FLSA Collective members was neither reasonable, nor was it made in good faith.

154. Because Monarch's decision to engage in this pay practice was not made in good faith, Monarch also owes Perdomo and the FLSA Collective members an amount equal to the unpaid wages as liquidated damages.

155. Accordingly, Perdomo and the FLSA Collective members are entitled to their unpaid wages under the FLSA (including minimum wages, agreed-upon wages up to 40 hours each week they worked overtime, and overtime wages in an amount equal to 1.5x their regular rates of pay), plus liquidated damages, attorney's fees, and costs.

## SECOND CAUSE OF ACTION—VIOLATIONS OF COLORADO WAGE-AND-HOUR LAW AS TO PERDOMO, THE ROUNDING CLASS, AND THE CHANGEOVER CLASS

156. Perdomo incorporates each allegation in paragraphs 1 to 144.

157. The conduct alleged in this Complaint violates Colorado Wage-and-Hour Law.

158. At all relevant times, Monarch Casino has been an "employer" within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6.

159. At all relevant times, Monarch Casino employed Perdomo, the Rounding Class members, and the Changeover Class members as "employees" within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(5); COMPS Order, Rule 1.5.

160. At all relevant times, Monarch Black Hawk has been an "employer" within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6.

161. At all relevant times, Monarch Black Hawk employed Perdomo, the Rounding Class members, and the Changeover Class members as "employees" within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. § 8-4-101(5); COMPS Order, Rule 1.5.

162. Colorado Wage-and-Hour Law requires employers to pay employees at a rate no less than the minimum wage for all time worked. *See* C.R.S. §§ 8-4-103, 8-6-106; COMPS Order, Rules 1.9, 3, 4.

163. Under Colorado Wage-and-Hour Law, time worked includes any time in which the employee is performing labor or services for the employer's benefit, including all time they are suffered or permitted to work, whether or not the employe requires them to do so. COMPS Order, Rule 1.9.

164. Colorado Wage-and-Hour Law requires employers to pay employees their agreed wages, which must be at least the applicable minimum wage for all hours worked. *See* C.R.S. § 8-4-103; COMPS Order, Rule 3.

165. As a result of Monarch's failure to pay on time and in full for all hours worked at a rate no less than the minimum wage for all hours worked, Monarch violated Colorado Wage-and-Hour Law.

166. Colorado Wage-and-Hour Law requires employers to pay overtime to all non-exempt employees. *See* COMPS Order, Rule 4.

167. Under Colorado Wage-and-Hour Law, overtime compensation at a rate no less than 1.5x the employee's regular rate of pay must be paid for all hours worked over 40 in a workweek, 12 hours in a workday, or 12 hours per shift. *See* COMPS Order, Rule 4.

168. Perdomo, the Rounding Class members, and the Changeover Class members are non-exempt employees who are entitled to be paid overtime for all qualifying hours worked.

169. Colorado Wage-and-Hour Law requires that all wages due to an employee be paid at regular pay periods of no greater duration than one calendar month or 30 days, whichever is longer, and on regular paydays no longer than 10 days following the close of the pay period. *See* C.R.S. § 8-4-103(1)(a).

170. By failing to pay Perdomo, the Rounding Class members, and the Changeover Class members their earned wages on their regular paydays, Monarch violated Colorado Wage-and-Hour Law.

171. At the time of paying wages, Colorado Wage-and-Hour Law requires the employer provide an itemized pay statement showing: gross wages earned, all withholdings and deductions, net wages earned, the inclusive dates of the pay period, the employee's name or social security number, and the employer's name and address. *See* C.R.S. § 8-4-103(4).

172. By failing to provide Perdomo, the Rounding Class members, and the Changeover Class members with accurate pay statements, Monarch violated Colorado Wage-and-Hour Law.

173. As a result of Monarch's failure to pay proper overtime on time and in full to Perdomo, the Rounding Class members, and the Changeover Class members, Monarch violated Colorado Wage-and-Hour Law.

174. Monarch's acts and omissions constituting violations of Colorado Wage-and-Hour Law were not undertaken in good faith or with reasonable grounds for believing the acts and omissions were not in violation of Colorado Wage-and-Hour Law.

175. Employers who violate Colorado Wage-and-Hour Law by failing to pay wages earned by an employee, and who continue to violate the Colorado Wage-and-Hour Law by failing to tender such wages within 14 days of receiving a written demand are liable for civil penalties. *See* C.R.S. § 8-4-109(3).

176. Monarch knew, or through the exercise of reasonable diligence should have known, that its policies violated Colorado Wage-and-Hour Law. As a result, Monarch's violations were willful within the meaning of Colorado Wage-and-Hour Law. *See* C.R.S. §§ 8-4-109(3)(b)(II), 8-4-122.

177. Perdomo, the Rounding Class members, and the Changeover Class members are entitled to recover their unpaid wages, liquidated damages, penalties, attorneys' fees, costs, and all other legal and equitable relief provided by Colorado Wage-and-Hour Law. *See* C.R.S. §§ 8-4-109(3)(b), 8-4-110, 8-6-118.

## Relief Sought

Perdomo prays for judgment against Monarch as follows:

a. For an order certifying a collective action for the FLSA claims;

b. For an order certifying a class action for the Colorado law claims;

c. For an order finding Monarch liable for violations of federal wage laws with respect to Perdomo and the FLSA Collective members;

d. For an order finding Monarch liable for violations of Colorado wage laws with respect to Perdomo, the Rounding Class members, and the Changeover Class members;

e. For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Perdomo and the FLSA Collective members;

f. For a judgment awarding all unpaid wages, liquidated damages, and penalties under Colorado wage laws to Perdomo, the Rounding Class members, and the Changeover Class members;

g. For a judgment awarding attorneys' fees to Perdomo and the FLSA Collective, Rounding Class, and Changeover Class members;

h. For a judgment awarding costs of this action to Perdomo and the FLSA Collective, Rounding Class, and Changeover Class members;

i. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Perdomo and the FLSA Collective, Rounding Class, and Changeover Class members; and

j. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: ***/s/ Matthew S. Parmet***
**Matthew S. Parmet**
CO Reg. # 53046
**PARMET LAW PC**
2 Greenway Plaza, Ste. 250
Houston, TX 77046
phone 713 999 5200
matt@parmet.law

**Attorneys for Plaintiff**

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

***/s/ Matthew S. Parmet***
**Matthew S. Parmet**